## NEWPORT LIGHT COMPANY *v.* NEWPORT.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 1022. Submitted January 22, 1894. — Decided February 5, 1894.

This court must, when its jurisdiction is invoked to review a decision of the highest court of a State, determine for itself whether the suit involves such a Federal question as can be reviewed here under Rev. Stat. § 709.

A gas company contracted with a municipal corporation in a State, to furnish gas in the streets of the municipality, to the exclusion of all others. Before the expiration of the term, the municipal corporation made a similar contract with another company. The first company, by means of a suit in equity against the municipality, begun in the court below and carried by appeal to the highest court of the State, obtained a decree restraining the municipality from carrying the second contract into execution, and enjoining it from contracting with any other person for lighting the streets with gas during the lifetime of the first contract. The municipality then, the first contract being still in full force and unexpired, contracted with an Electric Light Company to light the streets by electricity. Thereupon the first company procured a rule, in the suit in equity, against the municipality and its officers to show cause why they should not be punished for contempt of court for the violation of the decree. On the pleadings to this rule the trial court held that the injunction had been violated, and gave judgment accordingly. On appeal to the highest court of the State, that court reversed the decree below, and directed the lower court to discharge the rule. The case being brought here by writ of error, *Held,*

(1) That the decision of the state court of appeal, which construed the original decree granting the injunction, neither raised nor presented any Federal question whatever;

- (2) That the act of that court in ordering the court below to discharge the rule for contempt was not subject to review here;
- (3) Whether such an order was the final judgment of the highest court of the State, quære.

When the highest court.of a State, construing one of its own judgments, holds that a party thereto is not guilty of contempt, no Federal question is presented, so far as any decision of this court goes, which confers jurisdiction on this court to reëxamine or reverse the decision.

THIS case came before the court on motion of defendants in error to dismiss the writ of error for want of jurisdiction.

In 1880 the board of councilmen of the city of Newport, State of Kentucky, entered into a contract with the Newport Light Company to light the streets and public places of that city with gas for a term of twenty-five years to the exclusion of all others, and it was agreed that the company should also have the exclusive privilege of using the streets and public places for the purpose of laying pipes in which to convey the gas.

In 1885, while the Newport Light Company was in the actual performance of its contract, the city of Newport entered into another contract with the Dueber Light Company, by which the latter corporation agreed to undertake to furnish gas for lighting the city of Newport for a designated period. Before this latter contract was carried into execution, the Newport Light Company instituted suit in the Louisville Law and Equity Court against the city of Newport and the Dueber Light Company to restrain the city, its officers and agents, from carrying into effect the contract with the Dueber Light Company during the existence of the contract between the Newport Light Company and the city of Newport. The court rendered a judgment, which, in substance, enjoined the city from making or carrying into execution a contract with any person for lighting the streets, alleys, public buildings, and public places of the city with gas during the continuance of its contract with the Newport Light Company. The case was carried to the Court of Appeals of the State of Kentucky, and in May, 1886, the judgment of the lower court was affirmed. 89 Kentucky, 454.

In March, 1887, the city of Newport and the Newport

Light Company entered into a compromise agreement for the settlement of differences between them, one of the provisions of which was that "the amount of gas consumed to be paid for by metre measurement, and that when the city shall determine that a gas post shall be removed from one point to another, or is to be discontinued, the gas company shall remove the same at the expense of the city, and if discontinued, the same, including the requisite fixtures for the posts, shall be purchased by said city at their original cost." The compromise, however, was not to be understood as in any way waiving any existing rights or privileges granted the Newport Light Company by the existing contract.

By an act of the legislature, passed in 1890, the Suburban Electric Illuminating, Heating and Power Company, of Newport, Kentucky, was incorporated. Among other provisions of the incorporating act it was provided:

"SEC. 7. The general nature of the business of the corporation shall be the erecting, operating, and maintaining a general system of electrical dynamos and other apparatus for the purpose of generating, furnishing and selling electricity for light, heat, and power, and for any other purpose that the electric current may be applied in the city of Newport, and furnishing and supplying said city and its inhabitants, and other persons and corporations, and municipal corporations, located in or near said city, with light, heat, and power by the electric current.

"SEC. 8. Said corporation is authorized, subject to the same regulations and restrictions imposed by the city authorities of Newport upon other corporations in said city, to run its wires and conduits for electric power, lighting, and heating, in, under, on, and over the streets, alleys, and by-ways of said city and adjacent thereto: *Provided*, It shall in no way permanently obstruct the use of the same to the public or any individual; and it is hereby required to place in repair any street or highway under which it may lay its conduits, or in which it may erect its poles, or do such other work consistent with the general nature of the business of the corporation; but it may temporarily obstruct the same."

On April 17, 1890, the legislature amended the charter of the city of Newport as follows:

" The board of councilmen are hereby authorized to contract for lighting the city of Newport and [supplying] its inhabitants in any mode now known or which may hereafter be discovered, and in so doing grant the use of the public places and of the streets of the city for such purposes : *Provided*, That said contract shall not interfere with any existing right or contract.

" Sec. 7. All acts in conflict with this act are hereby repealed.

" Sec. 8. This act shall take effect from and after its passage."

It was assumed by the city of Newport that the act incorporating the Electric Illuminating Company, and the act amending the charter of the city, in connection with the modification of the original contract between the city and the Newport Light Company, operated to suspend or abrogate the injunction granted in the suit of the Newport Light Company against the city of Newport and the Dueber Company ; and, acting upon this theory, the city of Newport, after proper resolution had been passed in April, 1891, by its board of councilmen, entered into a contract with the Suburban Electric Illuminating, Heating and Power Company for furnishing the city with electric lights. In connection with this contract the board of councilmen resolved " that the city discontinue the use of the lamp posts now in use for both gas and gasoline, and the gas light thereby furnished, on July 1, 1891, and the city clerk is directed to notify the Newport Light Company thereof, and request that it send the city a statement of the original cost of the lamp posts, including the requisite fixtures thereof."

Thereafter, on July 7, 1891, the Newport Light Company procured a rule from the Louisville Law and Equity Court to issue against the city of Newport and its board of councilmen to show cause why they should not be punished for contempt of court for a violation of the decree in the former suit of the *Newport Light Company* v. *City of Newport and the Dueber Company*.

The affidavit of the president of the Newport Light Company, upon which the rule issued, set forth that the contract entered into by the city of Newport with the Suburban Electric Illuminating, Heating and Power Company to light the city of Newport by electricity for the term of fifteen years, which went into effect on July 1, 1891, and at which time the Electric Illuminating Company commenced to furnish electric light under the contract, was an attempt on the part of the city of Newport to annul and set aside the contract made June 3, 1880, between the city and the Newport Light Company; and that this, with all other acts attending the making of the contract with the Electric Illuminating Company, was a violation on the part of the city of the injunction granted in the former suit of the *Newport Light Company* v. *City of Newport and the Dueber Company*, and in contempt of the authority of the court.

To this affidavit, on which the rule was issued, a demurrer was interposed by the defendants in error, which was overruled, and a response was then filed thereto, in which it was claimed that by the compromise of 1887 it was agreed that when the city should determine that a gas post was to be discontinued, the same, including the requisite fixtures for the post, should be purchased by the city at their original cost, and that this new modified contract was in force from that date until the doing of the several acts complained of, and was in lieu of the original contract, wherein the injunction was granted, and was a novation of the rights between the said parties as to the lighting and discontinuance of the lamp posts, gas, and gas lights.

The response further stated that, after the decree granting the injunction had been rendered, the general assembly, by an act passed in 1890, had invested the city of Newport with full power to provide for the lighting of its streets and public places with improved lights, and that the Suburban Electric Illuminating, Heating and Power Company was by the general assembly invested with full power to enter the streets of the city of Newport for the purpose of supplying electric lights to all such persons and corporations, including the city of Newport, as might contract for the same,

It also averred that the city entered into its contract with the Electric Illuminating Company under the authority conferred by these two acts of the legislature.

The Newport Light Company interposed its demurrer and exceptions to the response, which were sustained by the court, its ruling being that " the said response is adjudged insufficient, to which said respondents except, and, the respondents to the rule failing to make further response, it is adjudged that the acts set forth in the affidavit herein constitute a violation of the injunction heretofore granted in these causes, to which said respondents except; and the said respondents are allowed until the twenty-fourth day of July, eighteen hundred and ninety-one, to purge themselves of their contempt herein by setting aside and annulling the contract with the Suburban Electric Illuminating, Heating and Power Company, dated April 23, 1891, and ceasing to light or have lighted the streets, lanes, alleys, public buildings, or places of the city of Newport under said contract; and the said respondents are hereby ordered to rescind and set aside, before the said twenty-fourth day of July, eighteen hundred and ninety-one, the resolution passed on the twenty-third day of April, 1891, to discontinue the lamp posts and the light furnished thereby by the Newport Light Company, to which said respondents except; and the city of Newport is ordered to continue to take gas from the said company for the lighting of the places aforesaid as may be required for that purpose according to the contract between said city of Newport and the said company, dated June third, 1880, to which said respondents except."

From this judgment the respondents below appealed to the Court of Appeals of the State, which court on March 4, 1893, rendered a decision reversing the judgment of the Louisville Law and Equity Court. The grounds on which the Court of Appeals rested its reversal of the action of the lower court were that the contract between the Newport Light Company and the city of Newport, which was construed and sustained in 1885, in the suit between those parties, did not preclude the city from making a contract for lighting its streets and

public places with electricity, as long as the contract for furnishing it with gas remained in force ; that the legislative enactments, authorizing the city to contract with the Electric Illuminating Company for electric light, did not authorize the violation of the contract between the city and the Newport Light Company, as those acts provided that existing contracts should not be interfered with ; that while the Newport Light Company, under its contract, had the right to supply the city with gas, to which alone its contract had reference, it had no unlimited power over the streets for the purpose of lighting them, and had no right to restrict the city in the use of other and superior lights ; that its contract with the city authorized it to furnish gas or other light equally as good; that it could not be required to furnish, or the city to receive from it, electric light because its contract had reference to gas only, and could not have been construed in any other way by the court below, or by the Court of Appeals in the suit between the Newport Light Company and the city of Newport, decided in 1886 ; that the contention between the two corporations in that litigation was as to which gas light company should furnish the gas, the Dueber Light Company or the Newport Light Company; that that decision did not go to the extent of adjudging that no other company should furnish light of a different character, when, in the judgment of the city, the public interest required it.

It was also held that the original decree under which the injunction was made perpetual was in reference to the supply of gas alone, and could only be considered in that light, and the word " otherwise," used in the restraining order, could not be construed as giving the Newport Light Company the absolute right to furnish gas or any other light during the existence of its contract with the city ; that the Newport Light Company had its legal remedy, and must resort to that remedy if it shall have sustained damages by reason of the refusal of the city to have its streets and public places lighted by gas.

It was accordingly held by the Court of Appeals " that a court of equity will not interfere to prevent the city from

lighting the streets and public places with electric lights,"
and that the defendants in error had not violated the injunc-
tion in the original suit of the Newport Light Company
against the city of Newport and the Dueber Company, and
was not guilty of contempt. The court therefore directed the
lower court to discharge the rule against the defendants in
error.

At the request of the Newport Light Company, the Court
of Appeals certified "that on the trial and hearing of this
suit and case in this court the validity of said act of the gen-
eral assembly incorporating the said Suburban Electric
Illuminating, Heating and Power Company, and the authority
exercised under the same in making said contract between
said appellant and said last-named company as aforesaid, was
drawn in question on the ground that the same impaired the
obligation of the contract between the appellant and the
appellee, before mentioned, and was repugnant to the Con-
stitution of the United States, and that the decision of this
the highest court of law and equity of this State in which a
decision of this suit could be had was in favor of the validity
of said last-mentioned act of the said general assembly and
of the authority exercised thereunder by said appellant in
making said contract with said Suburban Electric Illuminat-
ing, Heating and Power Company."

A writ of error having been sued out from this court to the
Court of Appeals, a motion was made by the defendants in
error to dismiss that writ on the ground that the case pre-
sented no Federal question.

*Mr. William Lindsay* and *Mr. Charles J. Helm* for the
motion.

*Mr. William Stone Abert, Mr. R. W. Nelson, Mr. E. A.
Ferguson, Mr. Lucius Desha,* and *Mr. J. B. Foraker* opposing.

This proceeding is a suit within the meaning of the act of
Congress. A suit is a proceeding in a court of justice,
whereby a plaintiff seeks from a defendant a remedy for the
enforcement of a right or the redress of a wrong.

In *Weston* v. *The City Council of Charleston*, 2 Pet. 449, 464, by an ordinance passed by the city council of Charleston, stock of the United States was, among other things, made taxable. The plaintiffs, as owners of such stock, applied to the Court of Common Pleas for a writ of prohibition to restrain the city council from taxing that stock, on the ground that the tax would be inconsistent with the Constitution of the United States. The writ of prohibition was granted. The proceedings were removed to the constitutional court, which held that the tax was valid, and reversed the order of prohibition; whereupon a writ of error was brought. One question in the case was, "Is a writ of prohibition a suit?" The court said: "The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy which the law affords him. The modes of proceeding may be various, but if a right is litigated between the parties in a court of justice, the proceeding by which the decision of the court is sought is a suit."

Every court of equity has the inherent power to enforce obedience to its orders and judgments by process of contempt. That is the law in Kentucky. *Kaye* v. *Kean*, 18 B. Mon. 839, 844, and *Gorham* v. *Luckett*, 6 B. Mon. 146.

*McMicken* v. *Perin*, 20 How. 133, and *Callan* v. *May*, 2 Black, 541, two cases cited by counsel for defendants in error, are clearly distinguishable from the case at bar, in this, that they were appeals from judgments of United States courts, taken by persons seeking to interfere with the execution of mandates of this court, and involving no new question which could be properly tried between the same parties; while the plaintiff in error in this proceeding is seeking to enforce obedience to a decree; and the controversy between the parties is as to whether the acts charged constitute violations of the order of injunction, and if so, whether the defendants should be compelled to obey the same; their excuse being, that subsequent legislation authorized the interference with the execution of the decree. See *Daniels* v. *Tearney*, 102 U. S. 415, 417; *Eureka Lake Co.* v. *Yuba County*, 116 U. S. 410; *Upshur County* v. *Rich*, 135 U. S. 467, 474.

The record shows that the defendants in error in their response to the rule to show cause set up and relied upon the act of the legislature of Kentucky, incorporating the Suburban Electric Illuminating, Heating and Power Company and the sixth section of the act amending the charter of Newport, which authorizes the board of councilmen "to contract for lighting the city of Newport and its inhabitants in any mode now known or which may hereafter be discovered," etc., as authorizing them (the defendants) to violate the terms of the injunction, by making the contract with the Electric Company for lighting the streets of the city with electricity, and by passing the resolution to discontinue the taking of gas from the plaintiff. The validity of these two acts, and of the resolution, was drawn in question on the ground of their being repugnant to the Constitution, by plaintiff's demurrer to said response.

The lower court held that these acts of the legislature and the resolution of the city council were invalid, and did not justify the violation of the injunction, and that its judgment should be obeyed. The Court of Appeals decided in favor of the validity of said acts and resolution, and denied to the plaintiff the only remedy which it had for the enforcement of the rights adjudged to it.

The Court of Appeals could not have decided as it did, without deciding in favor of the validity of said acts of the legislature and of the resolution of the city council. The effect of the decision was to impair the obligation of the contract — to take away the remedy which plaintiff would have had but for said acts of the legislature.

MR. JUSTICE JACKSON, after stating the case, delivered the opinion of the court.

The above certificate of the Chief Justice of the Court of Appeals of Kentucky, while entitled to respectful consideration, does not in itself establish the existence of a Federal question in this case, and confer jurisdiction upon this court to reëxamine the judgment complained of. This court must

determine for itself whether the suit really involves any Federal question which will entitle it to review the judgment of the state court under section 709 of the Revised Statutes. *Parmelee* v. *Lawrence*, 11 Wall. 36 ; *Brown* v. *Atwell*, 92 U. S. 327; *Gross* v. *United States Mortgage Co.*, 108 U. S. 477; *Felix* v. *Scharnweber*, 125 U. S. 54; *Roby* v. *Colehour*, 146 U. S. 153; *Powell et al.* v. *Brunswick County*, 150 U. S. 433.

Looking, therefore, as we must, to the record in the cause to ascertain whether any Federal question is really involved, we are clearly of opinion that no such question is presented, and that the writ of error should be dismissed for want of jurisdiction in this court to review the judgment complained of.

It is shown by the record that this was a proceeding in contempt, and the sole question presented in the Louisville Law and Equity Court, as well as in the Court of Appeals, was whether the defendants in error were in contempt for violating the injunction granted in the suit of the Newport Light Company against the city of Newport and the Dueber Company. The judgment in that suit enjoined and restrained the city of Newport, its officers and agents, "from making or entering into any contract with any person, company, partnership, or corporation, for the lighting of the streets, lanes, alleys, public buildings, or places of the city with gas or otherwise, and from discontinuing the taking of gas from the Newport Light Company for the lighting of said places in such quantities as may be required for that purpose until the further orders of the court."

The contract entered into by the city with the Suburban Electric Illuminating, Heating and Power Company for lighting the city with electric lights was held by the Louisville Law and Equity Court to be a violation of the original injunction of that court, and so the city, its mayor, and board of councilmen were adjudged to be in contempt. The Court of Appeals of Kentucky reversed this order and remanded the cause to the lower court, with directions to discharge the rule. In making this order the Court of Appeals placed a construc-

tion upon the original decree granting the injunction, which limited its operation to a restraint upon the city against entering into any contract with other parties for the lighting of the city with gas, and held that the word "otherwise," used in the restraining order, could not be construed as giving to the Newport Light Company the absolute right to furnish gas and any other light during the existence of its contract with the city.

The Court of Appeals of Kentucky had an undoubted right to construe its own decision rendered in the case of the Newport Light Company against the city of Newport and the Dueber Company, and to declare what the judgment rendered therein really meant, and to define the scope thereof. This neither raised nor presented any Federal question whatever.

The contention on the part of the plaintiff in error really comes to this: That the state Court of Appeals erred in ordering the Louisville Law and Equity Court to discharge the rule for contempt. This is, in fact, the only question presented in the case. The reasons assigned by the Court of Appeals for reversing the action of the lower court did not of themselves present any Federal question; nor are they subject to review here. If this court could hold that the plaintiff in error was entitled to reverse the judgment of the Court of Appeals, the result would be that its mandate would issue to the Court of Appeals of Kentucky, directing that court to set aside its judgment of reversal, and thereby affirm the order of the Louisville Law and Equity Court, which would have the effect of holding the defendants in error guilty of contempt, and subject them to punishment as directed by that court.

This court has never gone to the extent of holding that such an order, as is here sought to be reviewed, was either a final judgment of the highest court of a State, or presented a Federal question, such as would entitle a party to have the judgment reëxamined here. The case presented both in the lower court and the appellate court of Kentucky was simply whether the acts of the defendants in error could be properly

considered a violation of the injunction granted in the original cause.

In *McMicken* v. *Perin*, 20 How. 133, the plaintiff in error was attached for contempt in refusing to make a conveyance after a tender and deposit of money in court had been made in compliance with a mandate of this court. He appealed to this court, and it was held that the proceedings in contempt involved no new question or decision, but were the ordinary means of enforcing the original decree, and in no sense was it a final decree upon which an appeal could be sustained. It was, in effect, the same as ordering an execution on a judgment of law which had been affirmed on error and remanded for execution to the Circuit Court.

In *Hayes* v. *Fischer*, 102 U. S. 121, 122, an injunction was granted. Complaint was made against Hayes for a violation thereof, and proceedings were instituted against him for contempt, which resulted in an order by the court that he pay a certain fine, and stand committed until the order was obeyed. To reverse this order, Hayes sued out a writ of error to this court, which the defendant in error moved to dismiss, on the ground that such proceedings in the Circuit Court could not be reëxamined by this court. The court, speaking by Mr. Chief Justice Waite, said : " If the order complained of is to be treated as part of what was done in the original suit, it cannot be brought here for review by writ of error. Errors in equity suits can only be corrected in this court on appeal, and that after a final decree. This order, if part of the proceedings in the suit, was interlocutory only. If the proceeding below, being for contempt, was independent of and separate from the original suit, it cannot be reëxamined here either by writ of error or appeal. This was decided more than fifty years ago in *Ex parte Kearney*, 7 Wheat. 38, and the rule then established was followed as late as *New Orleans* v. *Steamship Company*, 20 Wall. 387." The court held that it had no jurisdiction, and dismissed the writ of error.

No decision of this court has gone so far as to hold that the construction which the highest court of a State places upon its own judgment, and under which construction it holds that

a party thereto has not been guilty of contempt, presents a Federal question, such as would confer jurisdiction upon this court to reëxamine or reverse such a judgment.

Again, if we look to the grounds upon which the Court of Appeals reversed the action of the lower court in the matter of contempt, we find that they involve no Federal question. That court held that the amendment of the city's charter did not authorize the violation of its contract with the Newport Light Company. While it was held that the city could contract for electric lights in addition to gas, if it chose to pay for both, it could not dispense with the use of the gas under its contract with the Newport Light Company without violating its contract with that company ; and, further, that if the contract for lighting the city by means of electricity had the effect of displacing the use of gas, the city would be responsible in damages for any breach of its contract with the Newport Light Company, just as it would be if it were to discontinue the use of gas without adopting any other means or method for lighting the city. It is clear that no such breach of the city's contract with the Newport Light Company would in any way bring the case within the operation of the Federal Constitution relating to the impairment of the obligation of contracts. It would be simply a violation of contract obligations, such as involved no Federal question whatever.

Furthermore, it is not and cannot be questioned that the legislature of Kentucky had authority to incorporate the Suburban Electric Illuminating, Heating and Power Company, and to authorize it to contract with the city of Newport to light that city by electricity. It is equally clear that the legislature had the right, in amending the charter of the city of Newport, to authorize it to make a contract with the Electric Illuminating Company to light the city by electricity, providing that such contract should not interfere with the rights covered by any existing contract.

Under these two acts the city proposed to make a contract with the Electric Illuminating Company, not in lieu of its contract with the Newport Light Company, but in addition

thereto. Now, whether that contract violated the existing one between the city and the Newport Light Company was a question which could not be decided without the presence of the Suburban Electric Illuminating, Heating and Power Company, and that company was in no sense a party to the original suit, nor to the contempt proceedings had thereon; and the validity of its contract with the city was in no way involved in the contempt proceedings.

Again, the Court of Appeals construed the contract between the city and the Newport Light Company to mean that the latter had the right to supply the city with gas alone, and possessed no exclusive privilege of supplying other and different lights; and, further, that the city was not confined or restricted by that contract to the use of gas for lighting purposes, but had the authority, particularly under the legislation of 1890, to adopt electric lights, that it might, therefore, lawfully contract for the latter description of lights, and that such a contract for a different mode of lighting from that of gas would not, in and of itself, violate its contract with the Newport Light Company. But if that were otherwise, the Newport Light Company would have its claim against the city for damages for adopting such electric lights if they effected the discontinuation of the use of gas. In other words, if the adoption of the electric lights involved a breach of the city's contract with the Newport Light Company, that company had its remedy at law by an action for damages.

It was further held by the Court of Appeals that there was nothing in the legislation of 1890, amending the charter of the city, or incorporating the Suburban Electric Illuminating, Heating and Power Company, which in any way violated the contract between the Newport Light Company and the city, and that if any contract entered into between the city and the Electric Illuminating Company had the effect of abrogating or violating the contract between the city and the Newport Light Company, it did not arise from the legislation of the State, but from the act of the city, which act, at most, could not be anything more than a breach of its contract with the Newport Light Company, for which the latter had its

appropriate remedy by way of damages; that the subject-matter of the two contracts on the part of the city (one with the Newport Light Company and the other with the Suburban Electric Illuminating, Heating and Power Company) related to two different methods of lighting the city; and that the latter contract was not covered by the gas contract.

This court is not called upon to review the correctness or incorrectness of this reasoning on which the Court of Appeals reached its conclusion that the order of the lower court was erroneous. The judgment of the Court of Appeals, whatever may have been the reasons assigned therefor, merely reversed the action of the lower court, declaring that the defendants in error were in contempt, and directed that court to discharge the rule against them.

For the foregoing reasons we think no Federal question is presented by the writ of error, and it is hereby

*Dismissed.*