THE PEOPLE *v.* FOURQUET.

APPEAL from the District Court of Ponce.

No. 360.—Decided November 20, 1911.

CRIMINAL LAW—CONTEMPT BY PERJURY—PURPOSE OF LAW.—The purpose of Act No. 41 of March 9, 1911, is to abolish the crime of perjury committed in the presence of the court and to allow summary dealing with such cases whenever the falsity of the testimony is manifest to the judge of the court.

ID.—PERJURY PUNISHABLE AS CONTEMPT AND AS CRIME.—The fact that perjury committed in open court is punishable as contempt does not bar punishment thereof in criminal proceedings also.

ID.—DUE PROCESS OF LAW—CONSTITUTION—INHERENT POWER OF COURTS.—The courts have inherent power to punish any person who commits contempt in their presence and it is unnecessary to serve previous notice on or issue a warrant against the accused. This summary manner of punishing contempt does not violate the constitutional precept regarding due process of law.

ID.—CONSTITUTIONAL LAW—PERJURY PUNISHED AS CONTEMPT.—The provisions of Act No. 41 of March 9, 1911, authorizing summary punishment for perjury as contempt, establish a procedure which is absolutely constitutional and does not deprive the accused of any of the rights guaranteed to him by the Constitution.

ID.—DUE PROCESS OF LAW—SIGNIFICANCE THEREOF.—The constitutional precept embodied in the words ''due process of law,'' when applied to judicial proceedings, signifies that the trial court must be competent to take cogni-

zance of the case, that notice to the defendant must be express or implied, and that he must be granted a hearing wherein he may introduce his evidence and be heard personally or through counsel.

The facts are stated in the opinion.

*Mr. Felipe Casalduc* for appellant.

*Messrs. Foster V. Brown, Attorney General,* and *Jesús M. Rossy,* prosecuting attorney, for appellee.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The appellant in this case was found guilty of perjury and under the recent act of the legislature passed on March 9 last, was held in contempt of court and sentenced to be imprisoned in the district jail for three months. The act of the legislature seems to have been made in response to an unusual prevalence of false testimony in our courts and this summary method of punishment was devised to restrain and if possible eradicate this growing evil. (Session Acts 1911, Act 41, pp. 128 and 129.) The first section of the law provides:

"Section 1.—That when, during the trial of any case pending in any municipal or district court in Porto Rico, a witness shall appear and take an oath, or shall affirm that he will testify and depose truly before any such tribunal in any of the cases in which such an oath or affirmation may be administered, and after having taken such oath or affirmation, shall wilfully, and contrary thereto, state as true any material matter which he knows to be false, or which he does not know to be true, is guilty of perjury; and when such oath or affirmation is taken in open court, and is violated as herein provided, then said witness is guilty of a contempt of court, and shall be punished as hereinafter provided  *  *  *."

It is also enacted that this punishment for contempt is cumulative and does not prevent the prosecution and punishment of the offender for perjury under other statutes of the Island; this proceeding being only "intended as a summary manner of dealing with cases of perjury committed in open court where the falsity of the testimony is apparent to the judge of the court." (See also sec. 45 of the Penal Code.)

The present is the first case which has come to this court under the law referred to; and it is to be regretted that no

statement of facts, bill of exceptions, nor brief of counsel appears in the record.

It was suggested that possibly this act of the legislature, in providing a summary method of proceeding in cases like the present, might be found to be contrary to the American Constitution, prohibiting the deprivation of any person of his liberty without due process of law. (Fourteenth Amendment.) A reargument was therefore ordered and the Attorney General appeared, assisted by the *fiscal*, and both presented oral arguments and written briefs, and resubmitted the case on the 30th ultimo.

It must be borne in mind that the punishment inflicted in this case is imposed for the contempt and not for the crime of perjury by means of which it was committed.

This jurisdiction to punish for contempt committed in the presence of the court is a power that is inherent in every court and the Legislature of Porto Rico might have chosen to legislate on the subject and by a declaratory act to give the courts of the Island the undoubted right to punish for contempts committed in its presence, without issuing any order to the party so offending or giving him any notice. The court is inherently empowered to act on such a matter at once; no objection has ever been made to this procedure in the past, and no valid objection can now be made. This is a power exercised by all courts; such statutes are found in the States, and it is the universal practice in the courts, both Federal and State, when an offence is committed that is a contempt of court, in the presence of the court, to immediately impose punishment, and it has been held that it is no violation of the due process clause of the Constitution of the United States nor of any State.

But this record does not present a case of summary punishment inflicted by a court in virtue of its inherent powers. The law has been followed strictly and if the judgment is not to be upheld it must be on account of defects in the act itself.

The Legislature of Porto Rico prescribes the procedure

to be followed in perjury cases committed during the trial and in the presence of the court, and provides that if the judge presiding in a case should be satisfied that a witness in the case then pending in his court, after having taken the required oath, was guilty of perjury it shall be the duty of the judge and he is empowered on his own motion to cause the arrest and detention of the offender, and it is made his duty to issue an order, to be served on the delinquent, citing him to appear and show cause why he should not be punished for contempt of court. In the order the court must fix a time at which the defendant shall make his defense to the citation; the testimony on both sides is then to be heard, and on that testimony judgment shall be pronounced.

Does this statute take away from the offender any right secured to him under the Constitution or otherwise? Let us see what is meant by "due process of law" as that term is used in the great charter of our rights and liberties.

The word law appearing in the term "due process of law" is synonymous with the "law of the land." It has been well said that the Constitution contains no description of those processes which it was intended to allow or to forbid, and it has not even declared what principles are to be applied to ascertain whether any proceeding be "due process." (*Myers v. Shields,* 61 Fed. Rep., 717.) "Due process of law" does not mean the general body of the law as given in statute at the time the Constitution took effect; it means certain *fundamental* rights which our system of jurisprudence has always recognized. High authorities thus define it. "The term 'due process of law,' when applied to judicial proceedings, means that there must be a competent tribunal to pass on the subject-matter; notice, actual or constructive; an opportunity to appear and produce evidence; to be heard, in person or by counsel; and if the subject-matter involves the determination of the personal liability of the defendant, he must be brought within the jurisdiction by service of process within the State, or by his voluntary appearance; and there must be a course

of legal proceedings according to those rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights. The forms of procedure and practice may be changed, however, and the Constitution is satisfied if the substance of the right is not affected and if opportunity is afforded to invoke the equal protection of the law by judicial proceedings appropriate and adequate." (9 Cyc., 1084, and cases cited.)

The trial in the present case, as far as shown by the record, followed the statute and accorded the delinquent every right which he could legally demand.

"It follows that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law." (*Hurtado* v. *California,* 110 U. S., 537.)

The record in this case shows an order by a court directed to the defendant notifying him of the charge presented against him, citing him to appear at a certain day and show cause why he should not be held in contempt and present his testimony, and make his defense. It further shows a hearing of the testimony on both sides, and after that a judgment of conviction. The defendant was not condemned without a hearing. The statute provides that if it appears to the court that perjury has been committed the judge is empowered to detain the defendant and issue the process, but he does not condemn the accused. The offense which appears to the court to have been committed may be explained away; the false testimony given at the trial moves the conscience of the judge to action just as a *prima facie* hearing in a civil proceeding may impel a court to issue an alternative writ of *mandamus,* or to issue a preliminary injunction, or any other process which may be issued requiring a party to appear and show cause why judgment should not be pronounced.

We think there is no doubt of the power of the legislature to pass such an act as that on which this proceeding was based; and that it is in full force and vigor in all its parts.

The accused was deprived of no right. He was notified of the charge against him. A day was set for the hearing. He had his day in court. He had full opportunity to be heard in person and by counsel. No safeguard has been denied him. (*Tinsley* v. *Anderson*, 171 U. S., 106.)

From a careful examination of the record there appears to be no doubt of the defendant's guilt. The object of taking the appeal does not appear unless it be to delay the punishment or to take the chances of some lucky accident happening in favor of the convict.

After a careful examination of the law and the record we can find no reason for disturbing the judgment of the trial court. Such being the case the judgment herein rendered should be in all things affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro, and Aldrey concurred.