**FLANSBURG v. KAISER, Warden.**

No. 1723.

District Court, W. D. Missouri, Central Division.

April 24, 1944.

Abner Flansburg, in pro. per.

Roy McKittrick, Atty. Gen., and Robert J. Flanagan, Asst. Atty. Gen., for respondent.

GARDNER, Circuit Judge.

Petitioner's original petition for writ of habeas corpus having been held insufficient, 54 F.Supp. 433, he has on leave granted filed an amended petition. Respondent challenges the sufficiency of the amended petition by demurrer which may be treated as a motion to dismiss.

One of the issues discussed in the former opinion was whether petitioner had exhausted his state remedies before resorting to a Federal court, and it was noted that it was not made to appear what grounds were alleged as the basis for petitioner's application to the Supreme Court of Missouri for the writ, and that it did not appear that the State Supreme Court considered and adjudicated the merits of the contention presented here. In his amended petition, petitioner has by reference embodied a copy of his petition as presented to the Supreme Court of Missouri. In that petition it was alleged that he had been committed to the State Penitentiary of Missouri on the 19th day of April, 1937, by the Circuit Court of Pike County, Missouri, "having entered a plea of guilty in said court on said day to the crime of murder in the first degree as purportedly charged in the information against the petitioner; that in said proceedings in said cause the petitioner was not represented by counsel, and the petitioner was incapable adequately of making his own defense; that after said conviction and sentence as aforesaid, the petitioner was delivered to and confined in the state penitentiary under the sentence aforesaid, and he is now so confined." It was there alleged, as here, that his imprisonment was illegal and unlawful "because the petitioner was charged in the Circuit Court of Pike County, Missouri, with a 'capital offense'; to-wit, Murder in the First Degree, it was the duty of the trial court, whether requested or not, to assign counsel for the petitioner as a necessary requisite of due process of law, since petitioner was unable to employ counsel and was incapable adequately of making his own defense, and since the petitioner did not competently and intelligently waive his constitutional right to counsel, it follows that the jurisdiction of the trial court was lost."

In his amended petition filed here, petitioner alleges substantially the same grounds and alleged facts, and alleges in addition that, "The alleged crime occurred late on a Friday night, the petitioner was arrested early Saturday morning, and on the following Monday he was taken before the Circuit Court for sentence. At no time prior to his conviction and sentence, was the petitioner allowed to consult with counsel." It is not alleged that any application to amend his petition in the Supreme Court of Missouri was ever presented, nor was any effort ever made to obtain a review of the decision of that court by the Supreme Court of the United States or otherwise, though he alleges that he has exhausted his remedy in the state courts. There is no claim either in the petition presented to the Supreme Court of Missouri, nor in the petition now presented here, that the accused was not guilty of the charge of murder or that he desired to stand trial, or that he was induced in any way to enter the plea of guilty which he alleges he entered, nor is there any claim that he requested the court to appoint counsel to represent him. He stands on the proposition that it was the duty of the court, whether requested or not, to appoint counsel to represent him, and that having failed so to do the judgment passed upon him was violative of the constitutional right guaranteed him by the due process clause of the Fourteenth Amendment to the Constitution.

It seems clear that under the law of Missouri, the trial court even in a capital case is not required to appoint counsel for the accused unless requested so to do. In State v. Terry, 201 Mo. 697, 100 S.W. 432, 434, the court said: "This record does not show that defendant requested the court to appoint counsel for him, but it does disclose that the court found that he was able to employ counsel. Defendant being able to employ counsel, it was not the duty of the court to appoint counsel for him, even though he had requested it. *Besides, his failure to make such a request was a waiver of this statutory right.*" (Italics supplied.)

The matter was again before the Supreme Court of Missouri in State v. Miller, 292 S.W. 440, 442, where the court said: "Error is assigned to the failure of the court to appoint counsel for the defendant. The court is not obliged to appoint coun-

sel, *unless requested by a defendant in such case.* Section 3957 R.S.1919." (Italics supplied.)

The allegation that it was the duty of the trial court, whether requested or not, to assign counsel for the petitioner is a mere legal conclusion, and while his amended petition does state that he does not have means to employ counsel, it fails to state that he requested the court to appoint counsel for him. Viewed from the standpoint of Missouri law, the petition presented to the Supreme Court of that state was insufficient. But it is urged that under the decisions of the Supreme Court of the United States, particularly Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, it was the duty of the state court to appoint counsel in a capital case to represent the accused, whether requested so to do or not, and that a failure to make such appointment was violative of the due process clause of the Fourteenth Amendment. The cases relied upon are readily distinguishable, though they furnish some basis for the contention. In the case of Powell v. Alabama, supra, the defendants not only pleaded not guilty but they desired to stand trial and were in fact put on trial. There was under the facts disclosed in the Powell case real necessity for the appointment of counsel. In the instant case, the accused was charged with the murder of a woman whom he referred to as a "lady friend." He understood the charge, and he not only did not deny the killing, but pleaded guilty. He indicated no desire to stand trial. He manifestly knew whether or not he was guilty without the assistance of counsel.

The cases relied upon were later clarified, explained and limited by the Supreme Court in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595. In the Brady case, the petitioner had been indicted for robbery. He was unable to employ counsel and so informed the court at his arraignment, and he requested the court to appoint counsel for him. This was denied and the case went to the Supreme Court for review on writ of certiorari, and it was there claimed that his conviction was a deprivation of his liberty without due process, in violation of the Fourteenth Amendment "because of the court's refusal to appoint counsel at his request." In the course of the opinion it is, among other things, said: "He says the rule to be de-

duced from our former decisions is that, in every case, whatever the circumstances, one charged with crime, who is unable to obtain counsel, must be furnished counsel by the state." In referring to the case of Powell v. Alabama, supra, it is pointed out that the Alabama statute required the appointment of counsel for an indigent defendant and that "the trial was conducted in disregard of every principle of fairness and in disregard of that which was declared by the law of the State a requisite to a fair trial." After referring to a number of its former decisions, the court says, inter alia:

"Those cases, which are the petitioner's chief reliance, do not rule this. The question we are now to decide is whether due process of law demands that in every criminal case, whatever the circumstances, a state must furnish counsel to an indigent defendant. Is the furnishing of counsel in all cases whatever dictated by natural, inherent, and fundamental principles of fairness? * * *

"In the light of this common law practice, it is evident that the constitutional provisions to the effect that a defendant should be 'allowed' counsel or should have a right 'to be heard by himself and his counsel', or that he might be heard by 'either or both', at his election, were intended to do away with the rules which denied representation, in whole or in part, by counsel in criminal prosecutions, but were not aimed to compel the state to provide counsel for a defendant. At the least, such a construction by state courts and legislators cannot be said to lack reasonable basis."

Under the Constitution of Missouri, Article II, Section 22, a defendant is not to be denied the privilege of representation by counsel of his choice, and under the Missouri statute the court is required to appoint counsel where the defendant is unable to procure counsel and he requests such appointment. In the Brady case, supra, the court concludes that,

"In the light of this evidence we are unable to say that the concept of due process incorporated in the Fourteenth Amendment obligates the states, whatever may be their own views, to furnish counsel in every such case. Every court has power, if it deems proper, to appoint counsel where that course seems to be required in the interest of fairness. * * *

"As we have said, the Fourteenth Amendment prohibits the conviction and incarceration of one whose trial is offensive to the common and fundamental ideas of fairness and right, and while want of counsel in a particular case may result in a conviction lacking in such fundamental fairness, we cannot say that the amendment embodies an inexorable command that no trial for any offense, or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel."

In view of this decision of the Supreme Court it must be held that the decision of the Supreme Court of Missouri in denying petitioner's application was correct. Whether right or wrong, however, it was incumbent upon petitioner, if he desired a review of the decision to seek such review in the Supreme Court of the United States. As said by the Supreme Court in Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 450, "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court *only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted.*" (Italics supplied.)

See, also, United States ex rel. v. Tyler, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138; Hawk v. Olson, 8 Cir., 130 F.2d 910; Palmer v. McCauley, 9 Cir., 103 F.2d 300; Urquhart v. Brown, 205 U.S. 179, 27 S.Ct. 459, 51 L.Ed. 760.

As it now appears from the facts disclosed by the record that petitioner's application is wholly without merit, it must be denied and his petition dismissed.